**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Glenna Crosby, | No. CV-10-00064-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Life Insurance Company of the Southwest, a foreign corporation; Cunningham Financial Group, an Arizona business entity, | |
| Defendants. | |

Pending before this Court are a Motion for Partial Summary Judgment (Doc. 21) filed by Plaintiff Glenna Crosby and a Motion for Summary Judgment (Doc. 25) filed by Defendant Life Insurance Company of the Southwest ("LSW"). For the reasons set forth below, the Court denies Plaintiff's Motion for Partial Summary Judgment and grants Defendant's Motion for Summary Judgment.

**BACKGROUND**

At issue here is a life insurance policy issued by Defendant LSW in the name of James W. Crosby. (Doc. 1, Ex. A). Dr. Crosby applied for a $2.5 million life insurance policy with LSW in June 2008. (Doc. 21). Shortly thereafter, LSW discovered that Dr. Crosby had a $1.1 million life insurance policy with Indianapolis Life Insurance Company. LSW informed Dr. Crosby that he could either surrender the $1.1 million policy with Indianapolis Life or LSW

would issue a policy in the amount of $1.4 million because Defendant's financial underwriting guidelines would not permit more than $2.5 million total coverage. Dr. Crosby agreed to surrender the other policy, and LSW issued a $2.5 million policy, which designated Plaintiff Crosby as the beneficiary of the policy. Following Dr. Crosby's death on October 11, 2008, Plaintiff asserted a claim for the life insurance proceeds. (Doc. 1, Ex. A).

Because the policy had been issued within two years of Dr. Crosby's death, LSW conducted an investigation into the statements made on the application pursuant to A.R.S. § 20-1204 (2010). (Doc. 21). LSW subsequently learned that Dr. Crosby had a defined benefit pension plan, in connection with his dental practice, that provided life insurance in the amount of $1.4 million through Lafayette Life Insurance Company. This life insurance benefit was never disclosed by Dr. Crosby to LSW. In an August 20, 2009 letter, LSW explained that had the company been aware of the Lafayette policy, it would have denied Dr. Crosby's application for coverage because "together with the Indianapolis Life coverage, he was already at the limit of coverage of LSW's underwriting guidelines." (Doc. 22). LSW did note that, assuming Dr. Crosby would have surrendered his Indianapolis Life policy, LSW "may have offered him an LSW policy in an amount equal to" that policy. After discovering the undisclosed policy, LSW refused to pay any benefits to Plaintiff, asserting that under A.R.S. § 20-1109 (2010), Dr. Crosby's failure to disclose the additional policy on his application permits LSW to rescind the entire policy. Plaintiff challenges LSW's position, asserting claims of breach of contract and bad faith.[1]

**DISCUSSION**

**1.   Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).

---

[1] Plaintiff also asserted a claim of professional negligence against Defendant Cunningham Financial Group. However, Plaintiff voluntarily dismissed that defendant (Doc. 11), and therefore count three–professional negligence–is dismissed.

- 2 -

1 Substantive law determines which facts are material and "[o]nly disputes over facts that
2 might affect the outcome of the suit under the governing law will properly preclude the entry
3 of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact
4 issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the
5 nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)
6 (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine
7 factual issues "'can be resolved only by a finder of fact *because they may reasonably be*
8 *resolved in favor of either party*.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan*
9 *Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

**2.     Plaintiff's Motion for Partial Summary Judgment**

Plaintiff moves for summary judgment on the issue of whether Defendant is entitled to total rescission of Dr. Crosby's life insurance policy under A.R.S. § 20-1109. (Doc. 21). Under § 20-1109, misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent recovery under the policy unless:

1. Fraudulent.

2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer.

3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required by the application for the policy or otherwise.

Plaintiff argues that § 20-1109(3) should be interpreted as permitting total rescission only under the first fact scenario–where an insurer in good faith would not have issued *any* policy but for the material misrepresentation.

Arizona courts apply "'fundamental principles of statutory construction, the cornerstone of which is the rule that the best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction.'" *Backus v. State*, 220 Ariz. 101, 104, 203 P.3d 499, 502 (2009) (internal quotation marks omitted) (quoting *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 296, 152 P.3d 490, 493 (2007)). Section 20-1109 provides that

1 "[m]isrepresentations, omissions, concealment of facts and incorrect statements shall not
2 *prevent a recovery* under the policy unless" three elements have been met. (emphasis added).
3 The plain meaning of the statute is that once the listed elements have been established, an
4 insurance company is no longer required to pay the benefits under the policy.

5 Consistent with the plain language of the statute, Arizona case law makes clear that
6 "rescission" of an insurance policy is permitted if "all three subparagraphs of § 20-1109 are
7 satisfied." *Greves v. Ohio State Life Ins. Co.*, 170 Ariz. 66, 72, 821 P.2d 757, 763 (App.
8 1991); *see also Smith v. Republic Nat'l Life Ins. Co.*, 107 Ariz. 112, 115, 483 P.2d 527, 530
9 (1971) (concluding that "in order for recovery to be *prevented* under a policy", the elements
10 of all three subparagraphs must be met (emphasis added)); *Valley Farms, Ltd. v. Transcon.*
11 *Ins. Co.*, 206 Ariz. 349, 353, 78 P.3d 1070, 1074 (App. 2003) ("An insurer may not deny
12 coverage under a policy unless the insurer can prove that all three conditions of § 20-1109
13 have been satisfied."); *State Comp. Fund v. Mar Pac Helicopter Corp.*, 156 Ariz. 348, 352,
14 752 P.2d 1, 5 (App. 1987) (noting that all three subsections of the "*rescission statute*" must
15 be satisfied (emphasis added)). The Court has not found a single Arizona case that makes a
16 distinction between the three scenarios described in § 20-1109(3) in terms of the
17 consequences of making a material, fraudulent statement on an insurance application.
18 Arizona courts speak of rescission and avoiding liability, rather than partial rescission or
19 some other qualified denial of benefits. One Arizona court explained that "[i]f the insurer
20 would have issued the policy with some changes, rescission is available only if the changes
21 are one of the two listed in § 20-1109(3)." *Greves*, 170 Ariz. at 73, 821 P.2d at 764. Those
22 changes include issuing a policy in a smaller amount or denying coverage with respect to the
23 hazard resulting in the loss. § 20-1109(3).

24 Plaintiff compares the circumstances presented in *Greves* with the present facts. In
25 *Greves*, the insurance company stated that it would have provided the same coverage to the
26 insured, however, it would have charged a higher premium. 170 Ariz. at 69, 821 P.2d at 760.
27 Nevertheless, the insurance company argued that the first clause of § 20-1109(3) applied–that
28 it would not have issued the policy–because "charging a higher premium means that it would

- 4 -

not have issued the policy for which" the decedent had applied. *Id.* at 74, 821 P.2d at 765. The court rejected that argument. It first noted that a difference in premium was not a change listed in the statute, and therefore, could not serve as the basis for rescission. *Id.* at 73–74, 821 P.2d at 764–65. Furthermore, the court reasoned that if any difference in the policy, including a change in the premium charged, satisfied the first clause of § 20-1109(3), then the remaining clauses would be "meaningless." *Id.* at 74, 821 P.2d at 765. In contrast, the facts of this case fall squarely within the "changes" contemplated by the statute. If LSW had discovered the Lafayette policy during Dr. Crosby's application process, at most, it would have issued a $1.1 million policy based on its underwriting guidelines. Thus, it would have either issued a policy of a smaller amount or no policy at all.

There is simply no support either in the plain language of the statute itself or in Arizona case law for Plaintiff's argument that § 20-1109(3) should be interpreted as limiting an insurance company to partial rescission under certain circumstances. Accordingly, Plaintiff's Motion for Partial Summary Judgment is denied.

**3.     Defendant's Motion for Summary Judgment**

Defendant moves for summary judgment on Plaintiff's two remaining claims: breach of contract and bad faith. (Doc. 25). LSW asserts that there are no genuine issues as to any material fact with regard to its right to rescind Dr. Crosby's policy. LSW must establish that no reasonable jury could find in favor of Plaintiff with regard to any of the three elements listed in § 20-1109. *See Villiarimo*, 281 F.3d at 1061 (quoting *Anderson,* 477 U.S. at 248).

Plaintiff admitted that the statement regarding Dr. Crosby's "amount of currently in-force life insurance was material" to LSW's decision to issue the policy. (Doc. 24, Ex. 2). Therefore, element two has been established. Moreover, in her Motion for Partial Summary Judgment, Plaintiff acknowledges that had Dr. Crosby informed LSW of his Lafayette policy, LSW would have issued a $ 1.1 million policy, rather than the $2.5 million policy actually issued. (Doc. 21). Plaintiff included with her statement of facts a letter from LSW, explaining that at most LSW "may have offered [Dr. Crosby] an LSW policy in an amount equal to the Indianapolis Life policy." Accordingly, element three has also been established.

- 5 -

1   As to element one, a "showing of either legal or actual fraud can satisfy the fraud
2   requirement of § 20-1109." *James River Ins. Co. v. Schenk*, 523 F.3d 915, 921 (9th Cir.
3   2008) (citing *Russell v. Royal Maccabees Life Ins. Co.*, 193 Ariz. 464, 471, 974 P.2d 443,
4   450 (1998)). Because LSW's question asking Dr. Crosby to list any life insurance he had at
5   the time was designed to elicit, and in fact did elicit, a factual answer, rather than an opinion,
6   the answer constitutes legal fraud. *See Stewart v. Mut. of Omaha Ins. Co.,* 169 Ariz. 99, 103,
7   817 P.2d 44, 48 (App. 1991). "Legal fraud occurs when (1) a question asked by the insurer
8   seeks facts that are 'presumably within the personal knowledge of the insured,' (2) the
9   insurer would naturally contemplate that the insured's answer represented the actual facts,
10  and (3) the answer is false." *James River*, 523 F.3d at 921 (quoting *Russell*, 193 Ariz. at 471,
11  974 P.2d at 450); *see also Valley Farms*, 206 Ariz. at 353, 78 P.3d at 1074.

12  LSW's question regarding Dr. Crosby's life insurance sought facts of which Dr.
13  Crosby presumably would have had knowledge. In this case, it would be particularly
14  surprising that a person would not be aware of a $1.4 million life insurance policy that he had
15  obtained as a part of a defined benefit pension plan. After Dr. Crosby amended his
16  application, stating that the only life insurance policy he had at the time was the $1.1 million
17  Indianapolis Life policy and providing supporting documentation, LSW would reasonably
18  believe that Dr. Crosby's answers represented the actual facts. Finally, Plaintiff previously
19  admitted that Dr. Crosby's Lafayette policy was in force at the time he applied for insurance
20  with LSW, and that he did not disclose the existence of that policy. (Doc. 24, Ex. 2).[2]
21  Therefore, Dr. Crosby's response on his amended application was false. LSW has thus met
22  its burden of demonstrating that there is insufficient evidence in the record to raise a genuine
23  dispute with regard to the legal fraud element.

24  Because there are no issues of material fact pertaining to LSW's right to rescind the
25  policy, LSW is entitled to summary judgment on the claim of breach of contract. For similar

---

[2] Plaintiff failed to respond to Defendant's motion, and therefore has not presented any evidence contradicting Defendant's statement of facts or evidence.

- 6 -

reasons, LSW is also entitled to summary judgment on the bad faith claim. Bad faith requires a showing that the insurer acted unreasonably in denying benefits of a policy. *Prieto v. Paul Revere Life Ins. Co.*, 354 F.3d 1005, 1009 (9th Cir. 2004) (citing *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981)). The Court has determined that LSW had the right to rescind Dr. Crosby's policy pursuant to § 20-1109, and therefore, no reasonable jury could conclude that LSW acted unreasonably in denying Plaintiff the benefits of that policy.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 21) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 25) is **GRANTED.**

The Clerk of the Court is directed to terminate this action.

DATED this 21st day of December, 2010.

*/s/ H. Murray Snow*
G. Murray Snow
United States District Judge